# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| BRANDON CURTIS DABBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-4255-SRB |
| | ) |
| GEORGE A. LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Ausley, Barck, Boeckman, Conn, Dowd, Kohler, Ousley, Ozanich, Peterson, & Proctor's Motion to Dismiss Them from Plaintiff's Fourth Amended Complaint. (Doc. #109). For the following reasons the motion is granted in part and denied in part. The motion is granted to the extent Plaintiff brings Counts I, III, VI, VII, VIII, and IX against Defendant Corrections Officers in their official capacities and seeks money damages. The motion is granted to the extent Plaintiff brings Count VII against Defendant Corrections Officers in their individual capacities. Otherwise, the motion is denied.

### I. Legal Standard

Defendants Mark Ausley, Jody Barck, Stefan Boeckman, Richard Conn, James Dowd, Craig Kohler, James Ousley, Levi Ozanich, Jerald Peterson, and Arthur Proctor (collectively "Defendant Corrections Officers") bring the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

## II. Background

In his Fourth Amended Complaint (Doc. #95) Plaintiff Brandon Curtis Dabbs alleges the following facts, which the Court accepts as true in deciding Defendant Corrections Officers' motion. *Data Mfg.*, 557 F.3d at 851. Plaintiff is an inmate at Jefferson City Correctional Center ("JCCC"). (Doc. #95, ¶ 1). At the time of the alleged events, Defendant Corrections Officers were Missouri Department of Corrections ("MDOC") employees working at JCCC. (Doc. #95, ¶¶ 12–21). On March 12, 2016, "Plaintiff was forcibly catheterized" by certain co-defendants,[1] "with assistance by" Defendant Corrections Officers. (Doc. #95, ¶ 28). Defendant Corrections Officers "held Plaintiff down while a catheter was forced into his urethra ultimately causing trauma to the penis." (Doc. #95, ¶¶ 12–21). "The catheterization was carried out without Plaintiff's consent and in violation of MDOC policies." (Doc. #95, ¶ 29). "Plaintiff clearly and

---

[1] For purposes of the present motion to dismiss, the Court does not address Plaintiff's claims against these individuals and their employer Corizon Health, Inc. (collectively "Corizon Defendants") or any other defendant in this case.

2

unequivocally stated that he did not want to be catheterized." (Doc. #95, ¶ 42). Plaintiff's catheterization "was neither ordered nor necessary for the care and treatment of Plaintiff." (Doc. #95, ¶ 32). The catheterization caused Plaintiff to "bleed profusely from his penis." (Doc. #95, ¶ 53). "Upon removal of the improperly placed catheter, Plaintiff sustained traumatic injury to his penis." (Doc. #95, ¶ 7). "Plaintiff was taken to a hospital where it was determined that the catheter had not been placed in his bladder." (Doc. #95, ¶ 57).

Plaintiff brings the following claims against Defendant Corrections Officers: a claim under 42 U.S.C. § 1983 for excessive force in violation of his Eighth Amendment rights (Count I); battery (Count III); negligence (Count VI); intentional infliction of emotional distress (Count VII); a § 1983 claim for unreasonable search in violation of his Fourth Amendment rights (Count VIII); and a § 1983 retaliation claim (Count IX).[2] (Doc. #95). Plaintiff requests compensatory damages, punitive damages, and injunctive relief. (Doc. #95). Defendant Corrections Officers move to dismiss Plaintiff's claims against them on three grounds: (1) state sovereign immunity bars Plaintiff's claims; (2) various personal immunities bar Plaintiff's claims; and (3) Plaintiff fails to allege sufficient facts. (Doc. #102).

### III. Discussion

Plaintiff appears to bring Counts I, III, VI, VII, VIII, and IX against Defendant Corrections Officers in both their official and individual capacities.[3] The Court will consider each capacity in turn.

---

[2] Plaintiff's Fourth Amended Complaint includes two claims styled "Count IX," the first being a request for injunctive relief against Defendants and the second being a retaliation claim under § 1983. (Doc. #95, pp. 30, 32). For purposes of this motion, "Count IX" refers to Plaintiff's § 1983 retaliation claim.
[3] In his Fourth Amended Complaint, Plaintiff expressly sues Defendants George Lombardi, Dave Dormire, and Jay Cassidy in their individual and official capacities. (Doc. #95, ¶¶ 2–4). Plaintiff does not expressly state the capacity in which he sues the remaining Defendants, including Defendant Corrections Officers.

3

### A. Official-Capacity Claims and State Sovereign Immunity

Defendant Corrections Officers argue that Plaintiff's claims against them in their official capacities for money damages should be dismissed because state sovereign immunity bars claims for money damages brought against state officials in their official capacities. (Doc. #109, pp. 3–4). Plaintiff concedes that he is "unable to state a claim against" Defendant Corrections Officers "in their official capacities for damages" and "dismisses any such claim." (Doc. #111, p. 2 n.2). The Court agrees with the parties for reasons discussed in its prior order partially granting certain other defendants' motion to dismiss on the same grounds. (Doc. #108, pp. 3–4). To the extent Plaintiff asserts claims for money damages against Defendant Corrections Officers in their official capacities, these claims are dismissed. From here, the Court will address Counts I, III, VI, VII, VIII, and IX to the extent Plaintiff brings them against Defendant Corrections Officers in their individual capacities.

### B. Individual-Capacity § 1983 Claims and Qualified Immunity

Defendants argue they are entitled to qualified immunity on Plaintiff's § 1983 claims for excessive force (Count I), unreasonable search (Count VIII), and retaliation (Count IX). (Doc. #109, p. 4). Plaintiff argues that his Fourth Amended Complaint "invokes three constitutional protections" that were "clearly established when Plaintiff was forcibly catheterized." (Doc. #105, pp. 6–7). Under the doctrine of qualified immunity, a government officer sued under § 1983 in his individual capacity is "shielded from liability for civil damages" when performing discretionary functions unless his conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To overcome qualified immunity, a plaintiff typically must identify either 'cases of controlling authority in their jurisdiction at the time of the incident' or 'a

consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Jacobson v. McCormick*, 763 F.3d 914, 918 (8th Cir. 2014) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

At the dismissal stage, defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). Courts addressing qualified immunity in a motion to dismiss "must consider 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and whether the right was clearly established at the time of the alleged infraction.'" *Id.* at 754–55 (quoting *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)). Whereas, "[o]n the merits, to defeat a qualified immunity defense, plaintiff has the burden of proving that defendant's conduct violated a clearly established constitutional right," at the dismissal stage "the issue is whether plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Stanley v. Finnegan*, 899 F.3d 623, 626 n.2 (8th Cir. 2018) (citing *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) and quoting *Iqbal*, 556 U.S. at 678).

### i. Claim Under § 1983 for "Excessive Force" (Count I)

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (internal quotation marks omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or

5

maliciously and sadistically to cause harm." *Id.* (internal quotation marks omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). To decide whether prison officials used force reasonably or maliciously and sadistically, courts consider "whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Hudson*, 503 U.S. at 7. This standard "does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U.S. at 322. "An officer may be held liable only for his or her own use of excessive force." *Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014). Defendant Corrections Officers argue Plaintiff has not sufficiently pleaded that they violated his rights in Count I because "Plaintiff never alleges that Defendant Corrections Officers ordered Plaintiff's catheterization or participated in the placement of the catheter" and because "Plaintiff fails to allege any injuries associated with Defendant Corrections Officers['] actions." (Doc. #109, pp. 5–6). Plaintiff argues Count I sufficiently alleges that Defendant Corrections Officers maliciously and sadistically held him down during his involuntary catheterization with the intent to injure him because "6-8 guards held Plaintiff down, while he was already handcuffed to a gurney, for the purpose of allowing medical staff to forcibly catheterize" him. (Doc. #111, pp. 6–7).

Defendant Corrections Officers have not shown they are entitled to qualified immunity on Count I on the face of Plaintiff's Fourth Amended Complaint. First, Plaintiff has stated a plausible claim that Defendant Corrections Officers applied excessive force on him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. As to Count I,

6

Plaintiff alleges he "was subjected to a use of force by [Defendant Corrections Officers] after he objected to forced catheterization." (Doc. #95, ¶ 30). Plaintiff alleges that Defendant Corrections Officers, "while acting under the color of state law[,] used excessive and sadistic force to hold Plaintiff down while the Corizon Defendants forced a catheter into his [urethra]." (Doc. #95, ¶ 66). Plaintiff alleges that Defendant Corrections Officers' "actions were malicious, aimed at harassing and inflicting pain upon [Plaintiff] and had no reasonable medical basis." (Doc. #95, ¶¶ 21–21). Plaintiff alleges that "[t]he force used upon Plaintiff was excessive, applied maliciously and sadistically, and not in a good faith effort to achieve a legitimate purpose" and that "[t]here was no medical necessity for the forced catheterization," which "was in direct violation of multiple MDOC policies." (Doc. #95, ¶¶ 67–68). Plaintiff also alleges Defendant Corrections Officers "forcibly catheterized Plaintiff following his objection and such catheterization was sadistically and maliciously applied forcing Plaintiff to bleed profusely from his penis." (Doc. #95, ¶ 53). In light of these allegations, Plaintiff does not "fail[] to allege any injuries associated with Defendant Corrections Officers['] actions" as Defendant Corrections Officers argue.[4] (Doc. #109, pp. 5–6).

---

[4] Defendant Corrections Officers also point to Plaintiff's allegation that "Defendant Corizon through its employees ordered blood and urine tests when Plaintiff presented with what was suspected to be an over dose." (Doc. #124, pp. 2, 4) (internal quotation marks omitted) (quoting Doc. #95, ¶ 50). Defendant Corrections Officers argue this amounts to an allegation that they had no "involvement in the decision to catheterize Plaintiff" and thus defeats Plaintiff's Fourth and Eighth Amendment claims against them. (Doc. #124, pp. 2, 4). This Court disagrees. Federal Rule of Civil Procedure 8(d) allows a party to "plead inconsistent facts in support of alternative theories of recovery." *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970). In addition to the above allegation, Plaintiff alleges that "[n]o order for the catheterization has been produced" and that "catheterization was neither ordered nor necessary for the care and treatment of Plaintiff." (Doc. #95, ¶ 32). Plaintiff also alleges that Defendant Corrections Officers were among those directly responsible for catheterizing him. For example, Plaintiff alleges that "Corizon Defendants *and* [Defendant Corrections Officers] forcibly catheterized Plaintiff following his objection . . . ." and that, "[p]rior to force placing a catheter, Defendant Corizon . . . *and* [Defendant Corrections Officers] failed to first seek a urinalysis or consent from Plaintiff." (Doc. #95, ¶¶ 53–54) (emphasis added). The allegation that Defendant Corrections Officers highlight, by itself, does not require this Court to dismiss Counts I or VIII for failure to state a claim.

Plaintiff has plausibly alleged that Defendant Corrections Officers held Plaintiff down "without just cause or reason" and with the intent to injure Plaintiff, i.e., maliciously. Plaintiff has also plausibly alleged that Defendant Corrections Officers, by holding Plaintiff down when he was already handcuffed to a gurney in conjunction with other officers, who "rammed a catheter into Plaintiff's urethra," Plaintiff Defendant Corrections Officers "engaged in excessive cruelty," i.e., that they held Plaintiff down sadistically. *See United States v. Miller*, 477 F.3d 644, 647–48 (8th Cir. 2007) (quoting *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994)) (holding that correctional officer's "action intended to injure [an inmate] 'without just cause or reason,'" was "therefore malicious" and that "[s]imilarly . . . [the correctional officer's] unjustified attack constituted 'excessive cruelty' and was therefore sadistic"). The *Hudson* factors weigh in Plaintiff's favor at this stage in the litigation. Plaintiff plausibly alleges there was no objective need for such force due to Plaintiff being handcuffed to the gurney, the large number of officers present, and the lack of medical need. Plaintiff plausibly alleges that he posed no threat to Defendant Corrections Officers, that they made no attempt to temper the severity of their forceful response despite the opportunity to do so, and that the injury to his penis was "traumatic." Plaintiff plausibly alleges Defendant Corrections Officers had no legitimate reason for holding him down. As alleged, Plaintiff has stated a plausible claim that Defendant Corrections Officers violated his Eighth Amendment right to be free from cruel and unusual punishment.

Second, Plaintiff's right was clearly established at the time of Defendant Corrections Officers' alleged conduct. In the Eighth Circuit, "[i]t is 'well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and

unusual punishment clause.'" *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (quoting *Foulk v. Charrier*, 262 F.3d 687, 702 (8th Cir. 2001) (holding that "the law was clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult"). It was also clearly established that any malicious and sadistic "use of force greater than *de minimis*" and "any use of force that is 'repugnant to the conscience of mankind'" violates the Eighth Amendment. *Irving*, 519 F.3d at 446 (quoting *Hudson*, 503 U.S. at 9–10). The requirement that a plaintiff's allegedly violated right must be "clearly established" means that "Defendants must be put on 'fair warning' by the state of the law at the time of the conduct." *Irving*, 519 F.3d at 450 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "Prior cases need not be fundamentally or materially similar to provide fair warning." *Id.* "An officer who acts so far beyond the bounds of his official duties that 'the rationale underlying qualified immunity is inapplicable' can have fair warning even if there is no factually similar case." *Id.* (quoting *Hawkins v. Holloway*, 316 F.3d 777, 788 (8th Cir. 2003)). Here, at the time of Defendant Corrections Officers' alleged conduct, the law would have given reasonable officers in their circumstances fair warning that what they were doing violated Plaintiff's Eighth Amendment rights. *See Jacobson*, 763 F.3d at 918.

The Eighth Circuit's decision in *Levine v. Roebuck*, 550 F.3d 684 (8th Cir. 2008), does not change the outcome. In *Levine*, an inmate alleged a corrections officer and prison medical staff had violated his "Fourth and Eighth Amendment rights by forcing him to undergo catheterization to avoid prison discipline when he could not provide a urine sample for a random drug test." 550 F.3d at 685. The Eighth Circuit affirmed the district court's finding at summary judgment that these defendants did not violate the inmate's Eighth Amendment freedom from cruel and unusual punishment because the inmate produced "no evidence that any defendant

9

used force maliciously and sadistically for the purpose of causing [the inmate] harm." *Id.* at 690. The court pointed to the inmate's deposition testimony that "defendants acted for the legitimate purpose of obtaining a urine sample for a random drug test" and that the corrections officer "threatened him with a conduct violation if he did not provide a sample" and found that "[t]hese allegations fall far short of raising a genuine issue of material fact" as to whether the defendants acted maliciously and sadistically. *Id.*

Here, in contrast, the Defendant Corrections Officers' motion is one to dismiss for failure to state a claim, not one for summary judgment as in *Levine*. Plaintiff's allegations "are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg.*, 557 F.3d at 851. Plaintiff has alleged Defendant Corrections Officers had no legitimate purpose for their conduct, which no one ordered, and personally took part in Plaintiff's involuntary catheterization over Plaintiff's overt objections. (Doc. #95, ¶¶ 67–68). Plaintiff has alleged conduct by Defendant Corrections Officers that rises to the level of excessive cruelty committed for the purpose of causing Plaintiff harm. Assuming these allegations are true and construing them in Plaintiff's favor, the Court finds that a reasonable official in Defendant Corrections Officers' position would have believed the challenged conduct was unlawful. *See Jacobson*, 763 F.3d at 918. Defendant Corrections Officers have not shown they are entitled to qualified immunity on Count I on the face of Plaintiff's Complaint. Their motion to dismiss Count I is denied.

### ii. Claim for Unreasonable Search Under § 1983 (Count VIII)

In Count VIII, Plaintiff alleges that Defendant Corrections Officers, together with Corizon Defendants, "violated Plaintiff's [Fourth Amendment] rights by holding him down and involuntarily catheterizing him." (Doc. #95, ¶ 126). Plaintiff alleges that "[t]he catheterization

was not medically necessary" and that "[t]he force applied by [Defendant Corrections Officers] was for the purpose of facilitating an unconsented and unconstitutional forced catheterization of Plaintiff for the purposes of drawing urine," which violated Plaintiff's Fourth Amendment protection against unreasonable searches of his person. (Doc. #95, ¶¶ 120, 122–125). Defendant Corrections Officers argue they are entitled to qualified immunity on Count VIII because "Plaintiff never alleges that it was Defendant Corrections Officers' decision to use a catheter, nor could he, as corrections officers obviously cannot dictate to medical personnel what procedures to use to effectively carry out a physician's orders." (Doc. #109, p. 6). Plaintiff argues that "[f]orced catheterization is a violation of the constitutional right to be free of unreasonable searches" and that Defendant Corrections Officers "are in the best position to evaluate when actions, even those carried out by medical perso[nnel], may violate the established Constitutional Rights of the incarcerated." (Doc. #111, p. 8).

Defendant Corrections Officers have not shown that they are entitled to qualified immunity on Count VIII on the face of Plaintiff's Complaint. First, Plaintiff plausibly alleges that Defendant Corrections Officers violated his Fourth Amendment right to be free from unreasonable searches of his person. As alleged, Defendant Corrections Officers, among other defendants, helped cause Plaintiff's catheterization to occur. *See Cook v. Olathe Med. Ctr., Inc.*, 773 F. Supp. 2d 990, 1012 (D. Kan. 2011) (holding that, at summary judgment stage, record supported finding that corrections officers who "physically held down [arrestee] for" an involuntary catheterization "helped cause the catheterization to occur" and thus violated arrestee's clearly established Fourth Amendment rights). As Plaintiff alleges, there was no legitimate reason for the search—medical or otherwise. At the dismissal stage, this Court must accept as true Plaintiff's allegations that Defendant Corrections Officers were personally

11

responsible for Plaintiff's involuntary catheterization, which they performed without Plaintiff's consent and for no reasonable purpose. Defendant Corrections Officers are free to move for summary judgment and present evidence that they did not cause the search or that the search was reasonable. According to Plaintiff's allegations, however, they did and it was not. Plaintiff has stated a plausible violation of his Fourth Amendment rights.

Second, Plaintiff's Fourth Amendment right to be free from the forced catheterization performed as he alleges was clearly established at the time of Defendant Corrections Officers' conduct. While there is no controlling authority directly on point with the allegations in this case, a reasonable official in Defendant Corrections Officers' position would believe that direct participation in an inmate's forced catheterization for no legitimate purpose—when the inmate had not undergone voluntary catheterization in the past, the inmate expressly objected to the catheterization, and prison medical staff did not use the proper technique—violates that inmate's Fourth Amendment freedom from unreasonable searches of his person. At the time of the challenged conduct it was clearly established that "State-compelled collection and testing of urine . . . constitutes a search subject to the demands of the Fourth Amendment," *Levine*, 550 F.3d at 687 (internal quotation marks omitted) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)), and that "prison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies, . . . although 'a prison inmate has a far lower expectation of privacy than do most other individuals in our society.'" *Id.* (citing *Seltzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995)) (quoting *Goff v. Nix*, 803 F.2d 358, 365 (8th Cir. 1986)). It was also clearly established that "the forceful use of a catheter is a 'gross personal indignity' far exceeding that involved in a simple blood test." *Ellis v. City of San Diego*, 176 F.3d 1183,

1192 (9th Cir. 1999) (quoting *Yanez v. Romero*, 619 F.2d 851, 855 (10th Cir. 1980)), *as amended on denial of reh'g* (June 23, 1999).

Again, the Eighth Circuit's *Levine* decision does not change the outcome here. In that case, the court held it was not clearly established "that an involuntary catheterization for a non-medical purpose" violates an inmates Fourth Amendment rights where the inmate "had undergone voluntary catheterization in the past when he was unable to urinate" and medical staff "used proper technique in attempting" the catheterization. 550 F.3d at 6. Here, aside from the distinction that the present motion is one to dismiss rather than for summary judgment, Plaintiff does not allege that he was voluntarily catheterized in the past or that he was unable to urinate. Plaintiff does allege that a proper catheterization technique was not used. Reasonable officers in Defendant Corrections Officers' position could not have believed that the alleged intrusion into Plaintiff's body through his urethra for no reasonable purpose was consistent with the Fourth Amendment. *See Jacobson*, 763 F.3d at 918. Defendant Corrections Officers have not shown on the face of Plaintiff's Complaint that they are entitled to qualified immunity on Count VIII. The motion to dismiss Count VIII is denied.

### iii. "Retaliation" Under § 1983 (Count IX)

"An inmate may maintain a cause of action for retaliatory discipline under [§ 1983] where a prison official" takes disciplinary action against the inmate "in retaliation for an inmate's exercise of constitutional rights." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citing *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989)). Among other constitutional rights, inmates have a constitutional right to "refuse unwanted medical treatment," *see Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), and to file complaints "under established prison grievance procedures." *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.

1994) (citing *Sprouse*, 870 F.2d at 452) (holding that retaliatory disciplinary action "strikes at the heart of an inmate's constitutional right to seek redress of grievances").

Plaintiff alleges in Count IX that he complained to Defendant Corrections Officers and certain co-defendants "that he received inadequate healthcare and treatment that violated his constitutional rights." (Doc. #95, ¶ 133). Plaintiff further alleges that Defendant Corrections Officers, together with their co-defendants, "have retaliated against Plaintiff" after having received Plaintiff's complaints. (Doc. #95, ¶ 135). Defendant Corrections Officers argue they are entitled to qualified immunity on Count IX because Plaintiff "does not draw any nexus between protected activity and subsequent retaliation by Defendant Corrections Officers" and does not allege "that Defendant Corrections Officers had any personal involvement in the decision to have Plaintiff placed in segregation" or in any other alleged retaliatory activity. (Doc. #109, p. 7). Plaintiff argues his "allegations are sufficient to state a claim for retaliation." (Doc. #111, p. 9).

At this stage in the litigation, Defendant Corrections Officers have not shown they are entitled to qualified immunity on Count IX. First, Plaintiff states a plausible claim that Defendant Corrections Officers violated his constitutional rights. Plaintiff alleges he refused the catheterization and filed grievances about the catheterization after it was forced upon him, both of which are Plaintiff's constitutional rights. (Doc. #95 ¶¶22–23, 133). Plaintiff alleges that Defendant Corrections Officers, along with other defendants, received these grievances and retaliated against Plaintiff. (Doc. #95, ¶¶ 133–37). Plaintiff alleges retaliation in the form of being "placed in segregation," "denied medical care and treatment," "denied food until he urinated even though such an act was impossible," and "denied additional care and treatment." (Doc. #95, p. 136). Finally, Plaintiff alleges "[t]he retaliation suffered by Plaintiff is because of

14

complaints he has made." (Doc. #95, ¶ 139). Plaintiff plausibly alleges that Defendant Corrections Officers took disciplinary action against Plaintiff in retaliation for Plaintiff's exercise of his constitutional rights. This retaliatory disciplinary action itself violates Plaintiff's constitutional rights. *See Dixon*, 38 F.3d at 379.

Second, Plaintiff's right to be free from retaliatory discipline was clearly established at the time of Defendants Corrections Officers' conduct. The *Dixon* case is binding Eighth Circuit precedent and was decided eighteen years before this alleged conduct happened. *See* 38 F.3d at 379. The two rights Plaintiff was allegedly exercising that caused the retaliation—refusing unwanted medical treatment and seeking redress through prison grievance procedures—were established before *Dixon* was decided. *See Cruzan*, 497 U.S. at 278; *Sprouse*, 870 F.2d at 452. At the time of the challenged conduct, Plaintiff's constitutional right to be free from such discipline was beyond debate, and thus clearly established, such that reasonable officials in Defendant Corrections Officers' circumstances would have known they were violating that right. Defendant Corrections Officers do not show they are entitled to qualified immunity on Count IX at the dismissal stage. Their motion to dismiss Count IX brought against them in their individual capacities is denied.

    C. **Common Law Claims**

        i. **Battery Claim (Count III)**

To state a claim for battery, a plaintiff "must plead and prove an 'intended, offensive bodily contact with another person.'" *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 334 (Mo. banc 2011) (quoting *Cooper v. Albacore Holdings, Inc.,* 204 S.W.3d 238, 246 (Mo. Ct. App. 2006)). Defendant Corrections Officers argue that Plaintiff's Count III "fails because Plaintiff does not allege any specific facts against Defendant Corrections Officers."

(Doc. #109, p. 8). Plaintiff argues his allegations that Defendant Corrections Officers "physically applied force to restrain Plaintiff to facilitate an unwanted, unnecessary medical procedure" are sufficient to state a battery claim. (Doc. #11, p. 10). Here, Plaintiff's allegations already discussed are sufficient to state a plausible battery claim against Defendant Corrections Officers. Their motion to dismiss Count III is denied.

### ii. Negligence Claim (Count VI) and Official Immunity

"Missouri has long-applied the doctrine of official immunity," which "protects public employees from liability for alleged" negligence committed while performing discretionary acts in the course of their official duties. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (citing *Reed v. Conway*, 20 Mo. 22 (1854); *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006)). "Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Id.* (citing *Schooler v. Arrington*, 81 S.W. 468, 469 (Mo. Ct. App. 1904)). Defendant Corrections Officers argue official immunity shields them from Plaintiff's negligence claim because "the alleged actions by Defendant Corrections Officers are discretionary acts" and that the public duty doctrine shields their conduct if the Court views it as ministerial. (Doc. #109, p. 9; Doc. #124, p. 7). Plaintiff argues official immunity does not bar his negligence claim because his "allegations sufficiently allege 'willfully wrong' conduct" by Defendant Corrections Officers. (Doc. #111, p. 11).

Here, official immunity does not bar Count VI at the dismissal stage because, as discussed regarding Count I, Plaintiff has plausibly alleged that Defendant Corrections Officers acted maliciously. *See Lindsey v. Jackson*, No. 4:13-CV-1797 JAR, 2013 WL 6636169, at *3 (E.D. Mo. Dec. 17, 2013) (applying Missouri law and holding that official immunity doctrine did

not bar negligence claims because plaintiff plausibly alleged willful and wanton conduct); *Jones-El v. Roper*, No. 4:05CV28 CDP, 2008 WL 919539, at *4 (E.D. Mo. Apr. 1, 2008) (applying Missouri law and holding that "[a]s I have already found that [the plaintiff] has presented sufficient evidence to establish malice for the purposes of his excessive force claim, [the defendant] is not entitled to summary judgment on [the plaintiff's] assault and battery claims under the official immunity doctrine regardless of whether or not his acts were discretionary"). For the same reason, even if their actions are ministerial, Missouri's public duty doctrine does not shield Defendant Corrections Officers' alleged conduct. *See Southers*, 263 S.W.3d at 612 (internal footnote omitted) (quoting *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)) (holding that "just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice or corruption, the public duty doctrine will not apply where defendant public employees act 'in bad faith or with malice'"). Defendant Corrections Officers' motion to dismiss Count VI is denied.

### iii. Claim for Intentional Infliction of Emotional Distress (Count VII)

"[T]o state a claim for intentional infliction of emotional distress," a plaintiff "must plead that 1) the defendants' conduct was extreme and outrageous, 2) the conduct was intentional or done recklessly, and 3) the conduct caused severe emotional distress that results in bodily harm." *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001) (citing *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). "Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress." *Ward v. Smith*, 844 F.3d 717, 723 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Cent. Mo. Elec. Coop v. Balke*, 119 S.W.3d 627, 636 (Mo. Ct. App. 2003)). Defendant Corrections Officers argue this Court should dismiss Plaintiff's Count VII because Plaintiff's Fourth Amended Complaint "fails to describe"

17

Plaintiff's alleged emotional distress "in any detail and, crucially, does not demonstrate that his emotional distress is medically diagnosable or significant." (Doc. #109, p. 8) (internal quotation marks omitted) (quoting *Salau v. Jones*, No. 2:14-CV-04307-NKL, 2015 WL 5999781, at *5 (W.D. Mo. Oct 13, 2015)). Plaintiff argues his allegation that he "sustained medically diagnoseable damages as a result of the forced catheterization" is sufficient to state a claim for intentional infliction of emotional distress against Defendant Corrections Officers. (Doc. #111, pp. 10–11) (citing Doc. #95, ¶ 116). Here, Plaintiff fails to state a claim against Defendant Corrections Officers for intentional infliction of emotional distress because he does not allege that his emotional distress—as opposed to the catheterization—resulted in bodily harm, *see Thornburg*, 62 S.W.3d at 427, or that Defendant Corrections Officers' "sole intent in acting was to cause emotional distress." *See Ward*, 844 F.3d at 723. Defendant Corrections Officers' motion to dismiss Count VII is granted.

## IV. Conclusion

Accordingly, Defendants Ausley, Barck, Boeckman, Conn, Dowd, Kohler, Ousley, Ozanich, Peterson, & Proctor's Motion to Dismiss Them from Plaintiff's Fourth Amended Complaint (Doc. #109) is granted in part and denied in part. The motion is granted to the extent Plaintiff brings Counts I, III, VI, VII, VIII, and IX against Defendant Corrections Officers in their official capacities and seeks money damages. The motion is granted to the extent Plaintiff brings Count VII against Defendant Corrections Officers in their individual capacities. Otherwise, the motion is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 9, 2019